UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RICHARD LORETO and LARRY BUFFA, on behalf of themselves and others similarly situated,<br><br>c/o:<br>Faruqi & Faruqi, LLP<br>369 Lexington Avenue<br>New York, NY 10017<br><br>Law Offices of Scott A. Bursor<br>369 Lexington Avenue<br>New York, NY 10017<br><br><br>                               Plaintiffs,<br><br>-against-<br><br>THE PROCTER & GAMBLE COMPANY<br>One Procter and Gamble Plaza<br>Cincinnati, Ohio 45202<br><br>Serve: CT Corporation Systems<br>1300 East Ninth Street<br>Cleveland, Ohio 44114<br><br>                            Defendant. | <u>Case No.:</u>  1:09-CV-00815<br><br><br><u>Judge</u>:  Thomas M. Rose |

## <u>CONSOLIDATED AMENDED CLASS ACTION COMPLAINT WITH JURY DEMAND</u>

Plaintiffs Richard Loreto and Larry Buffa (the "Plaintiffs"), by their attorneys, make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to allegations specifically pertaining to themselves and their counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action for damages and injunctive relief arising out of The Procter & Gamble Company's ("P&G") sale of two new products, Vicks® DayQuil® Cold and Flu Symptom Relief plus Vitamin C and Vicks® NyQuil® Cold and Flu Symptom Relief Plus Vitamin C (collectively, "DayQuil and Nyquil Plus Vitamin C") through false and misleading consumer advertising and marketing practices in violation of the consumer protection laws of the State of Ohio, New Jersey and the other states listed herein.   As a direct and proximate result of P&G's false and misleading advertising claims and marketing practices, Plaintiffs and the members of the Class purchased DayQuil and Nyquil Plus Vitamin C to treat conditions for which the drug was not efficacious, effective, and useful.

2.     P&G experienced a 7% decline in sales for its health care segment for the fiscal year, ending June 30, 2009.  P&G attributed much of the decline to the impact of a mild 2008-2009 cold and flu season on its highly profitable Vicks brand of products.  To counteract this decline in a highly profitable product line, P&G decided to introduce a new cold and flu remedy that would simultaneously capitalize on the Nyquil and Dayquil brand recognition but would differentiate itself from the market, provide a greater profit margin and give P&G's Nyquil and Dayquil products increased space and exposure on retailers' shelves.  To accomplish these objectives, P&G added Vitamin C to both its Nyquil and Dayquil products.

3.     Eager to counteract declining sales and profit from popularly held, but unsupported, beliefs that Vitamin C is effective for treatment of colds and flu, P&G rushed two new products, DayQuil and Nyquil plus Vitamin C, to market.  In its haste to capitalize on the frenzy, P&G failed to conduct any studies to determine whether DayQuil and Nyquil plus Vitamin C are efficacious, effective, and useful to treat the illnesses for which it marketed its new products and attempted to escape culpability for its conduct through failing to identify the

new active ingredient in the two new products: Vitamin C. In fact, P&G knew that there are no studies that have ever been able to establish the effectiveness of Vitamin C in treating common colds or the flu. Nevertheless, P&G entered into a vast marketing campaign for the new products, labeling, marketing and promoting them as a combination of established and approved over-the-counter treatments and dietary supplements in the form of Vitamin C (ascorbic acid).

4.    Coincidental with P&G's introduction of the new products Dayquil and Nyquil Plus Vitamin C, the H1N1 flu, also known as the swine flu, began infecting humans in Mexico and quickly spread to the United States. Concern about the potential impact of the H1N1 flu in rose to a level that the media labeled "hysteria." It had even prompted President Obama to "proclaim that, given that the rapid increase in illness across the Nation may overburden health care resources and that the temporary waiver of certain standard Federal requirements may be warranted in order to enable U.S. health care facilities to implement emergency operations plans, the 2009 H1N1 influenza pandemic in the United States constitutes a national emergency."

5.    To profit from this flu hysteria, P&G ramped up a marketing campaign designed to convince consumers that Dayquil and Nyquil Plus Vitamin C would provided "multi-symptom cold and flu relief" and the added Vitamin C would help blunt the effects of a cold. Thus, P&G marketed DayQuil and Nyquil plus Vitamin C and disseminated a series of materially false and misleading advertising claims in interstate commerce, including print advertisements, television advertisements, Internet advertisements, and point of sale materials disseminated in this District and elsewhere.

6.    For example, P&G's advertisements and promotional materials currently include claims that "VICKS NyQuil Cold & Flu Symptom Relief Plus Vitamin C provides multi-symptom cold and flu relief so you can get the sleep you need to enjoy an even sweeter

tomorrow. Plus, you'll also replenish your body with 150% of the daily value of vitamin C." Similarly, P&G claims Dayquil Plus Vitamin C "[c]ombin[es] the powerful multi-symptom relief of DayQuil with more than 150% of the recommended value of vitamin C."

7.     P&G's marketing and promotion of Dayquil and Nyquil Plus Vitamin C is expressly false and misleading to consumers and extremely harmful to legitimate competition and was purposefully designed to capitalize on the current swine flu hysteria by appealing to common consumer misconceptions regarding the efficacy of Vitamin C.

## JURISDICTION AND VENUE

8.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A).  This controversy, exclusive of interest and costs, exceeds $5,000,000.00, and the named Plaintiffs, as well as most members of the proposed Class, are citizens of states different from the state of the defendant.

9.     The Court has personal jurisdiction over P&G in that (i) P&G conducts continuous, regular and systematic business in this District, including advertising and selling health care products within and for use in this District; and (ii) P&G transacts significant business within this District, distributes Dayquil and Nyquil Plus Vitamin C, and disseminates the challenged advertisements in this District.

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the challenged advertisements and practices giving rise to the claims have been disseminated and committed in this District, and under 28 U.S.C. § 1391(c) because P&G is subject to personal jurisdiction in this District.

## THE PARTIES

11.     Richard Loreto is a resident of New Jersey.  Plaintiff purchased DayQuil and NyQuil Plus Vitamin C and has been damaged thereby.

4

12.     Larry Buffa is a resident of New Jersey. Plaintiff purchased DayQuil and NyQuil Plus Vitamin C and has been damaged thereby.

13.     P&G is a corporation organized under the laws of the State of Ohio, with its principal place of business located at One Procter & Gamble Plaza, Cincinnati, Ohio 45202. P&G is engaged in the business of manufacturing, marketing and distributing health care and branded consumer products under various brand names including Vicks®, Pampers®, Tide®, Ariel®, Always®, Whisper®, Pantene®, Mach3®, Bounty®, Dawn®, Gain®, Pringles®, Charmin®, Downy®, Lenor®, Iams®, Crest®, Oral-B®, Actonel®, Duracell®, Olay®, Head & Shoulders®, Wella®, Gillette®, and Braun®.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Dayquil or Nyquil Plus Vitamin C. Plaintiff also bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Sub-Class consisting of all residents of New Jersey who, within the relevant statute of limitations period, purchased Dayquil or Nyquil Plus Vitamin C. Plaintiffs reserve the right to amend or modify the Class definition with greater specificity or further division into subclasses or limitation to particular issues as discovery and the orders of this Court warrant.

15.     Excluded from the Class is the defendant, the officers and directors of the defendant at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which the defendant has or had a controlling interest.

16.     The Court can define the Class and create subclasses as may be necessary or desirable to adjudicate common issues and claims of the Class members if, based on discovery of additional facts, the need arises.

17.     Plaintiffs are members of the Class they seek to represent.

18.     The Class is so numerous that joinder of all members is impractical.  Although Plaintiffs does not yet know the exact size of the Class, P&G reported sales of $13.6 billion in its health care market segment, which includes DayQuil and NyQuil Plus Vitamin C.  Moreover, P&G claims that NyQuil is the #1 pharmacist recommended brand for Adult Cold Nighttime Relief.  Upon information and belief and based upon the Company's press releases and public filings, the Class includes more than 1 million members.  Accordingly, joinder is impracticable.

19.     There are numerous questions of law and fact common to the Class which predominate over any individual actions or issues, including but not limited to:

a.     Whether P&G's marketing of DayQuil and NyQuil Plus Vitamin C is false, misleading, and/or deceptive, and whether P&G's charges and/or practices are unjust, unreasonable or unlawful;

b.     Whether DayQuil and NyQuil Plus Vitamin C were efficacious, effective, and useful for the treatment of common colds; and

c.     Whether DayQuil and NyQuil Plus Vitamin C were efficacious, effective, and useful for the treatment of the flu.

20.     Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and the members of the Class were exposed to defendant's false, misleading, and deceptive marketing and promotional materials and were subject to P&G's unjust, unreasonable and unlawful practices.

21.     Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class and common issues predominate.

22.     Plaintiffs have retained counsel competent and experienced in complex class actions.

23.     Notice of this class action can be provided to Class members by techniques and forms similar to those customarily used in other class actions, such as by published notice, or Internet notice, or first-class mail or a combination thereof, or other means deemed suitable for this Class.

24.     Class certification is appropriate because defendant has acted, or refused to act, on grounds generally applicable to the Class, making class-wide relief appropriate.  In addition, the prosecution of separate actions by individual members of the Class would create a risk of incompatible standards of conduct for defendant and inconsistent or varying adjudications for all parties.  A class action is also superior to other available methods for the fair and efficient adjudication of this action.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

25.     For fiscal year 2008, ending June 30, 2008, P&G reported that net sales increased 9% for its health care segment to $14.6 billion.  For fiscal year 2009, however, P&G's health care segment net sales were down 7% to $13.6 billion in 2009 on a 4% decline in unit volume. P&G attributed much of the decline to the impact of a mild 2008-2009 cold and flu season on Vicks.

26.     To counteract the recent declines in sales from its highly profitable Vicks brand of products with the company's health care segment, P&G introduced two new products:  Nyquil Cold and Flu Symptom Relief plus Vitamin C and DayQuil Cold and Flu Symptom Relief plus Vitamin C, both in caplet form.  The active ingredients in each DayQuil Plus Vitamin C caplet

are 325 mg of acetaminophen, 10 mg of dextromethorphan HBr, 5 mg of phenylephrine HCl, and 50 mg of Vitamin C (ascorbic acid).  Similarly, the active ingredients in each caplet NyQuil Plus Vitamin C are 325 mg of acetaminophen, 15 mg of dextromethorphan HBr, 6.25 mg of doxylamine succinate, and 100 mg of Vitamin C (ascorbic acid).

27.     The introduction of these new products served a threefold purpose.  First, P&G sought to counteract declining sales in its highly profitable Nyquil and Dayquil product lines by introducing a new cold and flu remedy that would simultaneously capitalize on the Dayquil and Nyquil brand recognition but would differentiate itself from the market.  Second, by adding the additional new ingredient and packaging, labeling and promoting the product in a misleading and deceptive manner, P&G was able to charge higher prices for DayQuil and NyQuil Plus Vitamin C than it does for its Dayquil and Nyquil products without Vitamin C.  Third, P&G sought to capture more shelf space in retail outlets to provide more exposure for the Dayquil and Nyquil products, and thereby obtain a competitive advantage and increased sales.

28.     Against this back drop, a global outbreak of a new strain of influenza A virus subtype H1N1 began infecting humans in Mexico in January 2009.  The FluH1N1 flu quickly spread to the United States, and the specific strain of the virus was labeled Pandemic H1N1/09 by the World Health Organization in April 2009. The disease has also been termed novel influenza A (H1N1) and 2009 H1N1 Flu by the U.S. Centers for Disease Control and Prevention and commonly referred to as the swine flu.

29.     In haste to introduce DayQuil and NyQuil Plus Vitamin C to counteract declining sales and capitalize on the flu hysteria, P&G labeled and marketed these products as a combination of P&G's over-the-counter (OTC) drugs NyQuil and DayQuil with dietary supplement products in the form of ascorbic acid or Vitamin C in an attempt to avoid the delay

attendant to the submission of an new drug application ("NDA") with the Food and Drug Administration ("FDA").

30.     Rather than conduct studies to support the claim that added Vitamin C was effective for the treatment of cold and flu symptoms, P&G sought to capitalize on popular belief and practice with respect to Vitamin C.  As explained by Vicks assistant brand manager Jason Partin, "Wellness trends in the respiratory category indicate that vitamins have become a regular part of the medication routine."

31.     P&G then marketed and promoted these products for "COLD & FLU Multi-Symptom Relief."  In addition the promotional materials for DayQuil and NyQuil Plus Vitamin C bear a "Drug Facts" panel stating that this product is to be used to "temporarily relieve[ ] common cold/flu symptoms: • nasal congestion • cough due to minor throat and bronchial irritation • sore throat • headache • minor aches and pains [and] • fever."

32.     When P&G introduced these products, the company's website at www.vicks.com contained the following claims:

- "Combining the powerful multi-symptom relief of DayQuil with more than 150% of the recommended value of vitamin C."

- "VICKS NyQuil Cold & Flu Symptom Relief Plus Vitamin C provides multi-symptom cold and flu relief so you can get the sleep you need to enjoy an even sweeter tomorrow. Plus, you'll also replenish your body with 150% of the daily value of vitamin C."

- "Fortify Your Household for the Cold and Flu Season. . . .  Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects. Aim for 500 mg a day."

- "Fighting Cold and Flu Season. . . . Don't forget to take your daily vitamins. Consider taking extra vitamin C, vitamin A, and zinc, all of which may help you."

33.     P&G repeated similar types of claims in print advertising when the new products were introduced.

9

34. Additionally, P&G also published print advertisements prominently displaying the claim "Treat the cold. Replenish the body" featuring a cross section of a DayQuil caplet with an orange slice superimposed on the caplet. According to the advertisement:

> New Vicks DayQuil Plus Vitamin C. Now you can get multi-symptom relief with DayQuil and help replenish your body with 150% of the daily value of vitamin C. For nighttime relief, try new Vicks NyQuil Plus Vitamin C.

35. To mark the introduction of Vicks DayQuil Plus Vitamin C and NyQuil Plus Vitamin C, Vicks teamed up with actress Marion Ross, one of America's most beloved television moms, "Mrs. C," from the popular 70's sitcom Happy Days, to create a television, Internet and print advertising campaign that centered on "Vicks DayQuil/NyQuil Plus Vitamin C Presents Chapters of Care," a compilation of tips from America's favorite television moms, such as Florence Henderson, Shirley Jones and Meredith Baxter on how they care for their loved ones during the cold and flu season. In an attempt to add credence to the campaign, P&G/Vicks enlisted the support of the American Lung Association in the distribution of "Chapters of Care."

36. Specifically, in "Chapters of Care," P&G/Vicks spokeswoman Marion Ross stated:

> Providing the best care for my family has always been my number one priority, especially during the inevitable cold and flu season, which is once again upon us.
>
> It's that time of year when our families come home with the sniffles, sore throats and body aches, so it's really important to provide a little extra TLC. With this in mind, I have partnered with Vicks®, a trusted brand for more than 100 years, to create Chapters of Care. This booklet features cold comfort tips from some of America's favorite TV moms, including myself, on how we've cared for our families during the cold and flu season. My tip is extra Vitamin C to provide care and comfort to my family. ***Now I'm especially excited because Vicks has created new Vicks DayQuil/NyQuil Plus Vitamin C®, which I will be sure to use this cold season!***
>
> My family's health and well-being are my number one priority, and when you're fighting a cold your body needs a little help. Throughout the years, I have found myself relying on Vitamin C to provide care for my family. ***Now I'm especially excited because Vicks is bringing together DayQuil and NyQuil, to help relieve***

***multiple cold symptoms, with Vitamin C to replenish what your body needs*** (emphasis added)***.***

37.     Although the advertisements for DayQuil and NyQuil Plus Vitamin C state vitamin C can help blunt the effect of a cold, there are no studies which demonstrate that vitamin C is unequivocally effective for the prevention or treatment of the common cold.

38.     Rather, David Schardt, senior nutritionist at the Center for Science in the Public Interest, a nonprofit consumer watchdog group in Washington, said efforts like these are nothing more than attempts to gain greater market share. Research on vitamin C, in particular, shows no real effect in fighting or preventing colds. "It's a cheap and easy way to distinguish your product from someone else's."

39.     On October 30, 2009, the FDA issued a warning letter to P&G with respect to DayQuil and NyQuil Plus Vitamin C.  This letter stated:

> Notwithstanding your attempt to market each of these products as a combination drug-dietary supplement, the presence of acetaminophen and dextromethorphan HBr, along with phenylephrine HCl ("VICKS DayQuil Plus Vitamin C") or doxylamine succinate ("VICKS NyQuil Plus Vitamin C"), with the intended uses of these ingredients as, respectively, pain reliever/fever reducer, cough suppressant, nasal decongestant, and antihistamine, render the entire product a drug in both cases. The vitamin C in these products could be marketed separately as a dietary supplement. However, where, as here, drug and dietary ingredients are combined into a single dosage form, the combination becomes a "drug" under section 201 (g) of the Act (21 U.S.C. § 321(g)). There is no provision in the Act, as amended by the Nutrition Labeling and Education Act of 1990 (NLEA) or by the Dietary Supplement Health and Education Act of 1994 (DSHEA), that exempts any part of "VICKS DayQuil Plus Vitamin C" or "VICKS NyQuil Plus Vitamin C" from the scope of section 201(g) of the Act (21 U.S.C. § 321(g)).3 Under section 201 (g)(1)(D) of the Act (21 U.S.C. § 321 (g)(1)(D)), the vitamin C used in combination with the other active ingredients listed in the "Drug Facts" panels for these products is also a drug because the vitamin C is a component of these finished drug products. See 21 C.F.R. § 210.3(b)(3). The vitamin C is also an "active ingredient" under 21 C.F.R. § 201.66(b)(2) because, based on representations on your website (e.g., "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects" and "Fighting Cold and Flu Season. . . . Consider taking extra vitamin C . . . which may help you") and on the product labels (e.g., the juxtaposition of "Vitamin C" in the product names to the label claim "COLD & FLU Multi-Symptom Relief"), it is intended to furnish

pharmacological activity or other direct effect in the mitigation and treatment of cold and flu symptoms. The vitamin C is also an "active ingredient" in that it is intended to affect the structure or function of the human body, based on website and print advertising claims that the products replenish the body. Finally, the directions next to the "Supplement Facts" panel to "Use as directed in Drug Facts" suggest that the vitamin C is intended for the same cold and flu symptom relief uses listed in the "Uses" section of the "Drug Facts" panel.

Products containing combinations of the active ingredients acetaminophen, dextromethorphan HBr, phenylephrine HCl, and doxylamine succinate, and intended for the treatment of cold and flu symptoms, are subject to the final monograph for Cold, Cough, Allergy, Bronchodilator, and Antiasthmatic Drug Products for Over-the-Counter Human Use (final monograph for OTC Cold-Cough Drug Products). (See 21 C.F.R. part 341.) That final monograph does not allow for the combination of vitamin C with any of the other active ingredients in "VICKS DayQuil Plus Vitamin C" and "VICKS NyQuil Plus Vitamin C." Therefore, because these combination OTC drug products do not comply with the final monograph for OTC Cold-Cough Drug Products, these combination OTC drug products lack general recognition of safety and effectiveness.

40.     With respect to the addition of Vitamin C, the warning letter stated:

The use of vitamin C for the treatment or prevention of the "common cold" was specifically evaluated under FDA's OTC Drug Review and was not included in the final monograph for OTC Cold-Cough Drug Products because ***the evidence was insufficient to classify vitamin C as safe and effective for such OTC use***. In the 1976 Advance Notice of Proposed Rulemaking for OTC Cold-Cough Drug Products, the Food and Drug Administration (FDA or agency) published the recommendations of the Advisory Review Panel on Over-the-Counter Cough, Cold, Allergy, Bronchodilator and Antiasthmatic Drug Products. In those recommendations, the Advisory Review Panel stated the following with respect to the use of vitamin C for treatment or prevention of the "common cold":

> The Panel is cognizant of the popular use of vitamin C (ascorbic acid) for the prevention or treatment of the "common cold." The Panel has reviewed the available data for the ingredient as a single entity and finds that the data are insufficient to permit final classification as safe and effective for OTC use in the prevention or treatment of the cold. . . .

***The Panel found no study which demonstrated that vitamin C is unequivocally effective for the prevention or treatment of the "common cold"*** although some data tended to favor effectiveness for treatment of cold symptoms. Since no conclusive data on the dose or dosage schedule are available on vitamin C used alone or in combination products with other ingredients for prevention or treatment of the cold, the Panel is unable to propose adequate labeling with a dosage regimen and has therefore classified such labeling as Category II. In summary, the Panel has reviewed vitamin C and has classified the "ingredient" as

Category III and any "labeling" for the prevention or treatment of the cold as Category II.  (emphasis added)

 The FDA went on to state that the combination of the OTC medication with Vitamin C is confusing: With regard to combination products, the Panel further notes that the use of vitamins in CCABA [cold, cough, allergy, bronchodilator and antiasthmatic] combination products for the prevention of colds is irrational since the other ingredients in these products should only be used when the symptoms of the "common cold" are present. It is difficult for the Panel to rationalize the use of vitamin C or any other vitamin for the treatment of the "common cold" in combination products which are to be used only for a short duration while symptoms persist. It would be illogical for a consumer to take a cold combination product to prevent a cold. The Panel has therefore placed the labeling claims of combination products containing vitamins including vitamin C for prevention of the "common cold" in Category II.

* * *

In the 2002 final monograph for OTC Cold-Cough Drug Products, FDA stated that:

> The agency has determined that the submitted studies do not contain sufficient detail to assess their value in establishing the effectiveness of ascorbic acid in reducing the duration or symptoms of the common cold. . . . Thus, the agency is not including ascorbic acid in this final monograph.

67 FR 78158 at 78159 (Dec. 23, 2002).

Accordingly, based on the combination of active drug ingredients (i.e., vitamin C, acetaminophen and dextromethorphan HBr along with phenylephrine HCl or doxylamine succinate) and their combined labeled uses to treat or mitigate cold and/or flu symptoms, **"VICKS DayQuil Plus Vitamin C" and "VICKS NyQuil Plus Vitamin C" are new drugs within the meaning of section 201(p) of the Act (21 U.S.C. § 321(p)) because they are not generally recognized as safe and effective for their intended uses. Thus, the current marketing of these two products violates section 505(a) of the Act (21 U.S.C. § 355(a)), because they are new drugs and neither is the subject of an approved new drug application.** (emphasis added)

41.     The FDA warning letter further found that DayQuil and NyQuil Plus Vitamin C

are "misleading and likely to confuse consumers" specifically noting:

> . . . *the labeling for these products is false and misleading, and therefore they are misbranded under section 502(a) of the Act (21 U.S.C. § 352(a)), because vitamin C is included in the list of "Inactive ingredients" in the "Drug Facts"*

*panel. Because the vitamin C in these products is an active drug ingredient, it is therefore both false and misleading to state that it is an inactive ingredient in these drug products. Additionally, listing vitamin C as an inactive ingredient, while at the same time listing it in the "Supplement Facts" panel as a dietary ingredient, is misleading and likely to confuse consumers, because it suggests both that the vitamin C is active and that it is inactive.*

Finally, "*VICKS DayQuil Plus Vitamin C" and "VICKS NyQuil Plus Vitamin C" are misbranded under section 502(a) of the Act (21 U.S.C. § 352(a)), because they falsely and misleadingly include the acetaminophen, dextromethorphan HBr, and phenylephrine HCl or doxylamine succinate in the list of "other ingredients" under the "Supplement Facts" panel. The acetaminophen, dextromethorphan HBr, and phenylephrine HCl or doxylamine succinate are active drug ingredients, and are listed as such in the "Drug Facts" panel. The simultaneous inclusion of them in the list of "other ingredients" is misleading and likely to confuse consumers, because it suggests both that these ingredients are active ingredients, and that they are something "other" than active ingredients. Furthermore, it is also false to state that these active drug ingredients are "other ingredients." Under FDA's regulations at 21 C.F.R. § 210.3(b), drug components are either active ingredients or inactive ingredients; the term "other ingredients" is neither applicable nor allowable with respect to components of a drug product.* (emphasis added)

42.     As a result of the foregoing, the FDA found P&G's marketing and sales of DayQuil and NyQuil Plus Vitamin C constituted a violation of federal law.

## Materiality Of P&G's Claims

43.     All of P&G's false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the effectiveness of DayQuil and NyQuil Plus Vitamin C to blunt the effects of and treat the symptoms of colds and flu, all of which are inherent and material qualities of products marketed and distributed by P&G.

44.     P&G's marketing materials were intended to, and did, induce Plaintiffs and members of the Class to rely upon the fact that DayQuil and NyQuil Plus Vitamin C were marketed and sold under the trade name of "Vicks®, a trusted brand for more than 100 years." P&G's marketing and packaging materials further intended to, and did, induce Plaintiffs and

members of the Class to rely upon P&G's representations that Dayquil and Nyquil Plus Vitamin C would provide "multi-symptom cold and flu relief" and the added Vitamin C would help blunt the effects of a cold. These representations were a substantial factor in causing Plaintiffs and members of the Class to purchase Dayquil and Nyquil Plus Vitamin C instead of lower priced competitors' products.

45.     At the time Plaintiffs and members of the Class purchased DayQuil and NyQuil Plus Vitamin C they were unaware of the fact that DayQuil and NyQuil Plus Vitamin C were not generally recognized as effective for their intended uses or that there has been no studies which demonstrated that vitamin C is unequivocally effective for the prevention or treatment of the common cold or flu, and therefore it was a violation of state and federal law for P&G to sell DayQuil and NyQuil Plus Vitamin C and promote it in a false, misleading, deceptive and/or unconscionable manner.

46.     If Plaintiffs and members of the Class had been aware of the fact that DayQuil and NyQuil Plus Vitamin C were not effective for their intended uses and that it was illegal for P&G to sell DayQuil and NyQuil Plus Vitamin C, Plaintiffs and members of the class would not have purchased the products.

47.     As a result, Plaintiffs and members of the Class who purchased DayQuil and NyQuil Plus Vitamin C which were not efficacious, effective, and useful for their intended uses and were illegal for sale at the time of the consumer transactions have been injured in fact and have suffered an ascertainable out of pocket loss.  Plaintiffs and members of the Class therefore seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

## COUNT I

## (For Violation of the Ohio Consumer Sales Practices Act)

48.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

49.     Plaintiffs and members of the Class are persons who purchased DayQuil and NyQuil Plus Vitamin C primarily for personal, family, and/or household use.  Therefore, the purchases of DayQuil and NyQuil Plus Vitamin C by Plaintiffs and members of the Class are "consumer transactions" as that term is defined in O. R. C. § 1345.01 (A).

50.     P&G is an Ohio corporation that routinely engages in the business of effecting and/or soliciting consumer transactions on a nationwide basis from its headquarters in Cincinnati, Ohio.  As described herein, P&G purposefully undertook a national media campaign to promote Dayquil and Nyquil Plus Vitamin C thereby soliciting consumer transactions for those products on a nationwide basis.  As a result, P&G is a "supplier" covered by the Ohio Consumer Sales Practices Act which applies to all persons "engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." O.R.C. § 1345.01(C).

51.     By the acts and conduct alleged herein, P&G committed unfair or deceptive acts and practices both before and during the consumer transactions with Plaintiffs and members of the Class in violation of O. R. C. § 1345.02, including specifically but not limited to the following:

  a)  Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that DayQuil and NyQuil Plus Vitamin C is effective treatment for the common cold or flu;

b) Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that Vitamin C is an effective treatment for the common cold or flu, to wit: "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects" and "Fighting Cold and Flu Season. . . . Consider taking extra vitamin C . . . which may help you";

c) Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that the addition of Vitamin C to DayQuil and NyQuil enhanced the effectiveness of such products as effective treatment of the common cold or flu;

d) Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that the addition of Vitamin C to DayQuil and NyQuil enhanced the effectiveness of such products as effective treatment of the common cold or flu and extracting a significantly higher retail price for DayQuil and NyQuil Plus C than DayQuil and NyQuil on the basis of such false, misleading and deceptive claims.

52.     By the acts and conduct alleged herein, P&G committed unconscionable acts and practices acts both before and during the consumer transactions with Plaintiffs and members of the Class in violation of O. R. C. § 1345.03.

53.     P&G committed the unfair, deceptive and/or unconscionable acts and practices in Ohio and/or such unfair, deceptive and/or unconscionable acts and practices emanated from its corporate headquarters in Ohio, targeting both Ohio consumers and consumers nationwide.

54.     P&G's actions as alleged herein are substantially similar to acts and/or practices that have previously been found to violate the Ohio Consumer Sales Practices Act by one of the

methods identified in O.R.C. 1345.09(B), including but not limited to the decisions, judgments and or opinions attached as Exhibits A-M attached hereto all of which were available for public inspection in accordance with O.R.C. 1345.05(A)(3).

55.     Plaintiffs and members of the Class relied to their detriment on P&G's false, deceptive, misleading and unconscionable claims about DayQuil and NyQuil Plus Vitamin C and purchased said products at a materially higher price than they would have otherwise paid for DayQuil and/or Nyquil or other comparable products in the absence of P&G's unlawful promotional activity.  As a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, Plaintiffs and members of the Class suffered actual injury.

56.     Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

57.     On behalf of themselves and other Class members, Plaintiffs seek damages and/or rescission, equitable and/or injunctive relief, and also seeks equitable and declaratory relief, together with a reasonable counsel or attorney's fee, and such other relief as the Court may deem necessary or appropriate to remedy these violations.

## COUNT II

### (For Violation of the Ohio Deceptive Trade Practices Act)

58.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

59.     By the acts and conduct alleged herein, P&G committed unfair or deceptive acts and practices both before and during the consumer transactions with Plaintiffs and members of the Class in violation of O. R. C. §§ 4165.02(A)(2) and/or (A)(7), including specifically but not limited to the following:

a)  Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that DayQuil and NyQuil Plus Vitamin C is an effective treatment for the common cold or flu;

b)  Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that Vitamin C is an effective treatment for the common cold or flu, to wit: "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects" and "Fighting Cold and Flu Season. . . . Consider taking extra vitamin C . . . which may help you";

c)  Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that the addition of Vitamin C to DayQuil and NyQuil enhanced the effectiveness of such products as an effective treatment of the common cold or flu;

d)  Falsely, deceptively and/or misleadingly claiming and suggesting in widely disseminated promotional materials that the addition of Vitamin C to DayQuil and NyQuil enhanced the effectiveness of such products as an effective treatment of the common cold or flu and extracting a significantly higher retail price for DayQuil and NyQuil Plus C on the basis of such false, misleading and deceptive claims.

60.  P&G issued the false and misleading representations regarding Dayquil and NyQuil Plus Vitamin C from its corporate headquarters in Ohio, targeting both Ohio consumers and consumers nationwide.

61. P&G's false and misleading representations regarding Dayquil and NyQuil Plus Vitamin C had a tendency to mislead a substantial segment of the target audience for P&G's promotional campaign.

62. P&G's false and misleading representations regarding Dayquil and NyQuil Plus Vitamin C were material and were likely to influence consumer's purchasing decisions with regards to cold and flu products.

63. Plaintiffs and members of the Class in fact were misled by P&G's false, deceptive, and misleading claims about DayQuil and NyQuil Plus Vitamin C and purchased said products at a materially higher price than they would have otherwise paid for DayQuil and/or Nyquil or other comparable products in the absence of P&G's unlawful promotional activity.  As a direct and proximate result of Defendant's deceptive acts and practices, Plaintiffs and members of the Class suffered actual injury.

64. Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

65. On behalf of themselves and other Class members, Plaintiffs seek damages and/or rescission, equitable and/or injunctive relief, and also seeks equitable and declaratory relief, together with a reasonable counsel or attorney's fee, and such other relief as the Court may deem necessary or appropriate to remedy these violations.

66. Plaintiffs and the Class reserve the right to allege further violations of Ohio's CSPA as P&G's conduct is ongoing.

<u>**COUNT III**</u>

<u>**(For Violation of Title 56, Chapter 8, of New Jersey's Consumer Protection Act)**</u>

67.     Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

68.     Alternatively, Plaintiffs allege that P&G's conduct violated the following state consumer protection statutes by the conduct alleged above.

69.     Plaintiffs assert this claim on behalf of themselves and a Sub-Class consisting of all residents of New Jersey who, within the relevant statute of limitations period, purchased Dayquil or Nyquil Plus Vitamin C.

70.     Defendants engaged in false and misleading advertising concerning the efficacy of Dayquil or Nyquil Plus Vitamin C for the treatment of colds and flu.

71.     By advertising, marketing, distributing, and/or selling Dayquil or Nyquil Plus Vitamin C to Class members located in New Jersey, Defendant engaged in deceptive acts and practices.

72.     As Defendants materially misled members of the Sub-Class, Defendants' acts and practices were improper.

73.     Defendants have violated, and continue to violate, Title 56, Chapter 8 of the New Jersey Consumer Protection Act, which makes such deceptive acts and practices unlawful.

74.     Plaintiffs seek to enjoin such unlawful and deceptive acts and practices as described above. Class members located in New Jersey will be irreparably harmed unless Defendant's unlawful actions are enjoined in that P&G will continue to falsely and misleadingly advertise the safety and efficacy of Dayquil and Nyquil Plus Vitamin C.  Towards that end,

Plaintiffs request an order granting appropriate injunctive relief.  Plaintiffs have not previously asked for such injunctive relief.

75.     In addition, as a direct and proximate result of Defendant's violation of the New Jersey Consumer Protection Act unfair, Plaintiffs and members of the Sub-Class have been injured and suffered damages in an amount to be proved at trial by paying for DayQuil and NyQuil Plus Vitamin C to treat conditions for which the drugs were not efficacious, effective, and useful.

## COUNT IV

### (For Violation of State Consumer Protection Laws)

76.     Plaintiffs incorporates each and every allegation set forth above as if fully set forth herein.

77.     Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

78.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, et seq.

79.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, et seq.

80.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, et seq.

81.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, et seq.

82.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, et seq.

22

83.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or has made false representations in violation of COLO. REV. STAT. § 6-1-101, et seq.

84.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, et seq.

85.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.

86.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, et seq.

87.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, et seq.

88.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, et seq.

89.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, et seq.

90.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, et seq.

91.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, et seq.

92.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.

93.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE §714.16, et seq.

94.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, et seq.

95.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.

96.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, et seq.

97.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, et seq.

98.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, et seq.

99.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, et seq.

100.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, et seq.

101.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, et seq.

102.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, et seq.

103.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, et seq.

104.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, et seq.

105.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, et seq

106.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, et seq.

107.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, et seq.

108.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, et seq.

109.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, et seq.

110.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, et seq.

111.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, et seq.

112.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.

113.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, et seq.

114.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.

115.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, et seq.

116. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, et seq.

117. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, et seq

118. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, et seq.

119. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, et seq.

120. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, et seq.

121. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, et seq

122. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, et seq.

123. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, et seq.

124. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, et seq.

125. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, et seq.

126. Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, et seq.

127. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, et seq.

128. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, et seq.

129. Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, et seq.

130. As a direct and proximate result of Defendant's unfair, deceptive and/or unconscionable acts and practices, Plaintiffs and members of the Class have suffered damages in an amount to be proved at trial by paying for DayQuil and NyQuil Plus Vitamin C to treat conditions for which the drugs were not medically safe, efficacious, effective, and useful.

131. On behalf of themselves and other Class members, Plaintiffs seek damages, equitable and/or injunctive relief pursuant to state statutory law set forth above, and also seek equitable and declaratory relief, together with a reasonable counsel or attorney's fee, and such other relief as the Court may deem necessary or appropriate to remedy these violations.

## COUNT V

### (For Unjust Enrichment)

132. Plaintiffs incorporate each and every allegation set forth above as if fully set forth herein.

133. P&G's marketing materials were intended to, and did, induce Plaintiffs and members of the Class to rely upon the fact that DayQuil and NyQuil Plus Vitamin C were marketed and sold under the trade name of "Vicks®, a trusted brand for more than 100 years." P&G's marketing and packaging materials further intended to, and did, induce Plaintiffs and members of the Class to rely upon P&G's representations that Dayquil and Nyquil Plus Vitamin

C would provide "multi-symptom cold and flu relief" and the added Vitamin C would help blunt the effect of a cold.

134.    Plaintiffs and members of the Class purchased DayQuil and NyQuil Plus Vitamin C in reliance upon the fact that the products were sold under the trade name of "Vicks®, a trusted brand for more than 100 years," and upon the representations contained within the marketing, promotional and packaging materials for the products that Dayquil and Nyquil Plus Vitamin C would provide "multi-symptom cold and flu relief" and the added Vitamin C would help blunt the effect of a cold. These representations were a substantial factor in causing Plaintiffs and members of the Class to purchase Dayquil and Nyquil Plus Vitamin C instead of lower priced competitors' products.

135.    P&G sold DayQuil and NyQuil Plus Vitamin C and accepted, and continues to accept, full payment from Plaintiffs and members of the Class and have retained said payments for DayQuil and NyQuil Plus Vitamin C even though the products have not generally recognized as effective for their intended uses. Rather than refund the money to Plaintiffs and the Class for failure to deliver the goods as promised, Defendant has kept the money and thus has been unjustly enriched at the expense of Plaintiffs and the Class.

136.    As a result, Plaintiffs and members of the Class have been damaged in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

A.      Determining that this action is a proper class action;

B. Awarding compensatory damages in favor of Plaintiffs and members the Class against Defendant for all damages sustained as a result of the Defendant's wrongdoing, in an amount to be proven at trial, including interest thereon;

C. Awarding injunctive relief against Defendant to prevent Defendant from continuing its ongoing unfair, unconsionable and/or deceptive acts and practices;

D. Awarding Plaintiffs and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

E. Awarding such other and further relief as the Court may deem just and proper.

Respectfully submitted,

DATED: May 17, 2010           **MINNILLO & JENKINS, Co. LPA**

/s/ Christian A. Jenkins
CHRISTIAN A. JENKINS (Ohio Bar No. 0070674)
2712 Observatory Avenue
Cincinnati, Ohio 45208
Telephone: (513) 723-1600
Facsimile: (513) 723-1620
*Local Counsel for Plaintiffs*

FARUQI & FARUQI, LLP
Anthony Vozzolo
Jamie R. Mogil
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 983-9330
Facsimile: (212) 983-9331

LAW OFFICES OF SCOTT A. BURSOR
Scott A. Bursor
369 Lexington Avenue, 10th Floor
New York, NY 10017
Telephone: (212) 989-9113
Facsimile: (212) 989-9163

GARDY & NOTIS, LLP
Mark C. Gardy
560 Sylvan Avenue
Englewood Cliffs, New Jersey 07632
Telephone: (201) 567-7377
Facsimile: (201) 567-7377
*Attorneys for Plaintiffs*
*admitted Pro Hac Vice*

**JURY DEMAND**

Plaintiff demands a trial by jury as to all issues so triable in this matter.

/s/ Christian A. Jenkins
CHRISTIAN A. JENKINS (Ohio Bar No. 0070674)

30

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been duly served upon the following this

17th day of May 2010:

**Via the Court's CM/ECF Email System:**

Mark A. VanderLaan
DINSMORE & SHOHL LLP
255 East Fifth Street, Suite 1900
Cincinnati, OH  45202

Robert F. Ruyak
Joanne E. Caruso
Edward Han
HOWREY LLP
1299 Pennsylvania Avenue, N.W.
Washington,  D.C.  20004


/s/ Christian A. Jenkins