UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| RICHARD LORETO, and LARRY BUFFA, on behalf of themselves and all others similarly situated, | Case No. 1:09-cv-815 |
| | Judge Timothy S. Black |
| Plaintiffs, | |
| vs. | |
| THE PROCTER & GAMBLE COMPANY, | |
| Defendant. | |

**ORDER GRANTING DEFENDANT'S MOTION
TO STRIKE CLASS ALLEGATIONS (Doc. 58)**

This civil action is before the Court on Defendant's motion to strike class allegations (Doc. 58), and the parties' responsive memoranda (Docs. 61, 62).

### I. FACTUAL BACKGROUND

This is a false advertising case concerning the advertising statement: "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects" the Procter & Gamble Company ("P&G") made in connection with its Vicks® DayQuil® Plus Vitamin C and NyQuil® Plus Vitamin C products (collectively, the "Products"). The issue is whether the advertising statement is false and misleading in violation of New Jersey's Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8-1 *et seq.* ("NJCFA").

On June 25, 2010, P&G moved to dismiss the class action complaint ("CAC") in its entirety. (Doc. 29). This Court granted P&G's motion to dismiss. (Doc. 32). Plaintiffs appealed the Court's decision to the Sixth Circuit. The Sixth Circuit reversed the portion of the judgment dismissing Plaintiffs' claims under the NJCFA, predicated on

P&G's statement in its advertising that Vitamin C "won't cure a cold, but . . . can help blunt its effects." *Loreto v. P&G*, 515 Fed. Appx. 576, 582 (6th Cir. 2013) (citations omitted) (internal quotation marks omitted).

Plaintiffs allege that the "blunt its effects" statement is a false and misleading advertising statement that P&G used to promote the Products. (Doc. 22 at ¶¶ 5, 32, 33, 37, 43, 44). Plaintiffs allege that when P&G introduced the Products into the market, the company's website, www.vicks.com contained the "blunt its effects" statement. (*Id.* at ¶ 32). Plaintiffs further allege that "[a]lthough the advertisements for DayQuil and NyQuil Plus Vitamin C state vitamin C can help blunt the effect of a cold, there are no studies which demonstrate that vitamin C is unequivocally effective for the prevention or treatment of the common cold." (*Id.* at ¶ 37).[1] Plaintiffs allege that they relied upon P&G's false and misleading representations that the added Vitamin C in the Products would help blunt the effects of a cold. (*Id.* at ¶ 44).

Defendant moves to strike the class allegations because the class is overbroad, cannot meet the commonality or typicality requirements, and individual issues predominate. Conversely, Plaintiffs argue that P&G raises premature fact-based arguments regarding where the advertising statement at issue appeared and the number of class members who were exposed to it. While these factual arguments would be expected in a memorandum in opposition to class certification, Plaintiffs argue that they

---

[1] Plaintiffs further allege that the matter has been extensively studied by numerous experts who have concluded that Vitamin C "shows no real effect in fighting or preventing colds." (*Id.* at ¶ 38). The FDA's 1976 OTC Drug Review specifically found that Vitamin C was not a safe and effective treatment for the common cold. (*Id.* at ¶ 40).

are inappropriate at this time and should not be considered by the Court. Further, Plaintiffs maintain that they have yet to receive any documents from P&G in discovery and therefore the Court should postpone addressing the class certification arguments until after discovery has been conducted and after the parties have fully briefed the motion for class certification due to be filed on January 31, 2014.

## II. STANDARD OF REVIEW

"The party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). "Given the huge amount of judicial resources expended by class actions, particular care in their issuance is required." *Pipefitters Local 636 v. Blue Cross Blue Shield of Michigan*, 654 F.3d 618, 630 (6th Cir. 2011).

A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met. *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945 (6th Cir. 2011).[2] A court may properly strike class allegations prior to discovery where discovery would not have "alter[ed] the central defect in th[e] class claim." *Id.* at 949 (affirming the district court's judgment striking class allegations and dismissing a lawsuit prior to discovery, finding that the defect in the class action at issue involved "a largely legal determination" that "no proffered factual development offer[ed] any hope of altering."). In fact, this Court has previously struck class allegations where the class

---

[2] *See also Rikos v. Proctor & Gamble Co.*, No. 1:11cv226, 2012 U.S. Dist. LEXIS 25104, at *3 (S.D. Ohio Feb. 28, 2012).

could not be certified as defined and "no proffered or potential factual development offer[ed] any hope of altering that conclusion." *Rikos,* 2012 U.S. Dist. LEXIS 11564 at 4.

### III. ANALYSIS

#### A. Premature

Plaintiffs argue that Defendant's motion to strike is premature. Plaintiffs maintain that unlike in *Pilgrim*, where the court determined that no amount of discovery could alter the conclusion that the *Pilgrim* plaintiffs could not establish predominance, Plaintiffs here expect that discovery will demonstrate that class certification is appropriate.[3] However,

> Rule 13(c)(1)(A) says that the district court should decide whether to certify a class "[a]t an early practicable time," in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs. As a result, "[e]ither plaintiff or defendant may move for a determination of whether the action may be certified under Rule 23(c)(1)."

*Pilgrim*, 660 F.3d at 949.

This is a false advertising action and P&G maintains that it has provided the Court with all of the advertisements for the Products which show that the only remaining statement at issue in this case – "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects. Aim for 500 mg a day" – never appeared in any of the advertisements for the Products. (*See* Doc. 58-1, Ex.1-40; Doc. 58-2, Ex. A at 1-5, 11-16, 22-27).

---

[3] In *Pilgrim*, both the district court and the Sixth Circuit considered evidence beyond the pleadings in deciding that the requirements for certification could not be met. Ultimately, the district court found that "[t]here are also no issues of fact that predominate among the class." No. 5:09cv879, 2010 U.S. Dist. LEXIS 28298, at *11 (N.D. Ohio Mar. 25, 2010).

4

Specifically, attached to its motion to strike, P&G provided all of the actual packaging and advertisements for the Products, which demonstrate that the "blunt its effects" statement was not an advertising claim and did not appear in any of the advertisements or packaging for the Products.

P&G also provided the Vicks.com "tips" pages, which is the only place where the "blunt its effects" statement ever appeared.  (Doc. 58-2, Ex. A at 9-10, 20-21, 31-32). The web pages show that the statement appeared on a page embedded in the "StayWell" section of the Vicks.com website, for a period of months, with numerous other general health and wellness "tips" suggesting, among other things, that people keep their hands clean, get flu shots, use antibacterial wipes, take zinc, drink tea with honey, and eat chicken soup.  (*Id*.)  Defendant maintains this was the sole instance in which this phrase was used.  (Doc. 62 at 6).  P&G also provided page view records showing that the "tips" page only received 2,167 page views during the entire time it was on the Vicks.com website.  (Doc. 58-3 at ¶¶ 9, 10).  Therefore, only a few thousand people at most, and not necessarily any New Jersey residents who purchased the Products, were ever even exposed to the statement.

Additionally, P&G provided its response to the FDA's letter, written in November 2009, which confirms that the "blunt its effects" statement was not a product advertisement or claim associated with the Products, but instead appeared only on the "Stay Well" section of the Vicks.com website among other general health and wellness tips:

5

> [The] statement [did not] appear[] in connection with any product. Instead, [it] appeared in [a] general health advise article[] on the "Stay Well" [] section [] of the website, accompanied by such other generic lifestyle suggestions…Such [an] isolated reference [], made in the context of unbranded health and wellness tips, [is] in no way linked by context, meaning, or website navigation to P&G's separate [] product pages.

(Doc. 58-1, Ex. 41 at 8).

Plaintiffs allege that they will present evidence to refute P&G's factual contentions in support of their motion for class certification after discovery. However, Plaintiffs do not contest or dispute the facts in evidence or identify any further discovery that could alter the fact that the "blunt its effects" statement did not appear in any of the advertising or packaging for the Products. Moreover, P&G's counsel maintain that it has provided "virtually all the discovery that P&G agreed to produce (and that is conceivably relevant in this case) in response to plaintiffs' document requests, as those documents are attached as exhibits to the motion to strike. (Doc. 61-1, Ex. A). P&G maintains that no other discovery exists that could alter this conclusion.

The hypothetical existence of any "materially identical representations" in the advertising or packaging of the product is irrelevant because the Sixth Circuit expressly limited this case to Plaintiffs' claim under the NJCFA that Vitamin C "won't cure a cold, but…can help blunt its effects." (Doc. 38 at 10, 11). Therefore, even if there were materially similar representations in the advertising and on the packaging of the Products (which P&G maintains there are not), such evidence would be irrelevant because this case is limited only to the "blunt its effects" statement.

Accordingly, the Court finds that further discovery and briefing on the certification issue would simply postpone the inevitable conclusion that the putative class cannot be certified as explained here.[4]

**B.     Standing**

"The Article III standing requirements apply equally to class actions."  *Sutton v. St. Jude Med. S.C., Inc.*, 419 F.3d 568, 570 (6th Cir. 2005).  An individual has Article III standing only if he suffered an injury-in-fact that is causally connected to a defendant's alleged wrongdoing.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  While individual class members do not have to submit evidence of personal standing, a class cannot be certified if any members in the class would lack Article III standing.  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612-613 (1997) (instructing district courts to be "mindful that Rule 23's requirements must be interpreted in keeping with Article III constraints").

The proposed class includes all New Jersey residents who purchased the Products.  However, the majority of consumers who purchased the Products – in New Jersey or elsewhere – do not have Article III standing because they did not suffer an injury that is causally connected to the statement that Vitamin C "won't cure a cold, but…can help blunt its effects."  The vast majority, if not all, putative class members would lack standing to sue because they were never even exposed to the "blunt its effects" statement and therefore could not have suffered an injury, let alone one that is causally connected to

---

[4] A district court should determine "[a]t an early practicable time" whether class treatment is appropriate.  *Pilgrim* , 660 F.3d at 949 (quoting Fed. R. Civ. P. 23(c)(1)(A)).

that statement. Plaintiffs' assertion that "each and every" member of the class would be able to show economic harm connected to the "blunt its effects" statement is squarely contradicted by the evidence in this case.

The advertisements for the Products show that the "blunt its effects" statement was not an advertising claim made in connection with the Products. Because the statement was not made in the advertising, Plaintiffs cannot prove that all consumers in New Jersey paid a "price premium" caused by that statement. These consumers lack Article III standing.[5]

### C. Overbroad

A class is overbroad if it includes significant numbers of consumers who have not suffered any injury or harm. *See, e.g., McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001) (a class is overbroad where it "would include members who have not suffered harm at the hands of Defendant and are not at risk to suffer such harm."). The proposed class in this case, which would include all New Jersey residents who purchased the Products, would consist primarily of uninjured class members because most were never exposed to the "blunt its effects" statement, and, therefore, could not have been injured by it.

The only context in which the "blunt its effects" statement ever appeared was as one of approximately a dozen general health and wellness "tips" on a Vicks.com web page that received 2,167 total page views. Therefore, only a few thousand individuals

---

[5] *O'Shea v. Epson Am., Inc.*, No. 09-8063, 2011 U.S. Dist. LEXIS 105504, at *37 (C.D. Cal. Sept. 19, 2011) ("[A]bsent a showing that their injury was caused by the allegedly deceptive advertising, [unnamed class members] lack [Article III] standing.").

out of millions of purchasers were ever exposed to the "blunt its effects" statement. Even if the Court assumes that each of the 2,167 page views represents a unique viewer, and that each of those individuals actually purchased the Products, less than ¼ of 1% of all purchasers of the Products nationwide were exposed to that statement. Because few, if any, class members in New Jersey were ever exposed to the "blunt its effects" statement, the class is overbroad and cannot be certified.

### D. Federal Rule of Civil Procedure 23(a)

Rule 23(a) governs class actions brought in federal courts. To obtain class certification a Plaintiff must meet all of the following prerequisites of Rule 23(a): (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *Pilgrim*, 660 F.3d at 945. *See also* Rule 23(a) (numerosity, commonality, typicality, and adequacy). Once the Rule 23(a) requirements are satisfied, a party seeking class certification must also show that the proposed class is maintainable under one of the three provisions of Rule 23(b).

#### *1. Commonality*

Rule 23(a) requires that a plaintiff seeking to certify a class show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the plaintiff to demonstrate that the class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Duke*s, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982).

Plaintiffs allege that the commonality and typicality requirements of Rule 23(a) are met because all class members' claims arise from the alleged misrepresentations in the advertising that the Products "can blunt the effects of a cold." (Doc. 61 at 16, 17). However, the "blunt its effects" statement was not an advertising statement made in connection with the Products. Commonality is lacking because there is no actionable representation that was uniformly communicated to all or most putative class members. The "blunt its effects" statement is not a statement made in the advertising at all, let alone uniformly communicated throughout all the advertising. Only a few thousand people at most (and not necessarily those who purchased the Products or relied on the statement), even visited the web page on which the statement appeared. The millions of consumers who purchased the Products and never saw the statement could not have suffered an injury as a result of the statement.[6]

Accordingly, commonality of claims cannot be established.

### 2. Typicality

Rule 23(a) also requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

Typicality is also lacking because very few, if any, putative class members were ever even exposed to, let alone injured by, the "blunt its effects" statement, and therefore have no claim against P&G. *Romberio v. Unumprovident Corp.*, 385 Fed. App'x 423, 431 (6th Cir. 2009) (typicality lacking "[w]here a class definition encompasses many

---

[6] *DL v. District of Columbia*, 713 F.3d 120, 128 (D.C. Cir. 2010) (commonality lacking "in the absence of a uniform policy or practice that affects all class members").

individuals who have no claim at all to the relief requested"). Typicality requires, at a bare minimum, that all class members were "exposed" to the same allegedly false statements. (Doc. 22 at ¶ 20). Accordingly, typicality of claims cannot be established and Plaintiffs cannot meet the prerequisites of Rule 23(a).

### E. Individual Inquiries

"Where many individual inquiries are necessary, a class action is not a superior form of adjudication." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012). In this case, the Court would require individual inquiries of each class member to determine: (1) whether they were one of the 2,167 individuals exposed to the statement Vitamin C "won't cure a cold, but…can help blunt its effects," and (2) whether that statement played a role in their decision to purchase the Products. Unless each class member could show both exposure and causation, they would not be entitled to recover under the NJCFA.

NJCFA claims require a "causal relationship" between the allegedly unlawful conduct (the advertising) and class members' injuries. (Doc. 61 at 18). Causation cannot be established on a classwide basis in this case. First, the "blunt its effects" statement was not uniformly communicated to the entire class, so individual inquiries would be required to determine whether a particular class member was exposed to that statement. *Stephenson v. Bell Atl. Corp.*, 177 F.R.D. 279, 291 (D.N.J. 1997) ("To demonstrate the requisite predominance of common issues of fact and law [in an NJFCA case], plaintiffs must identify a small core of misrepresentations…made to all, or most of the class members."). Additionally, individual inquiries would be required to determine whether

11

the "blunt its effects" statement played a role in each class member's decision to purchase the Products. *See, e.g., Kleinman v. Merck & Co.*, 8 A.3d 851, 862-63 (N.J. Super. Ct. Law Div. 2009) (finding that "[t]he issue of causal nexus between the loss sustained by each member of the class and the consumer fraud…creates an insurmountable barrier to a class action.").[7]

Therefore, because the proposed class lacks Article III standing, is overbroad, fails to meet the Rule 23(a) prerequisites, and individual inquiries predominate, a class action cannot be maintained. Moreover, this is precisely the type of case that *Pilgrim* anticipated, as no discovery can alter this conclusion.

## IV.   CONCLUSION

Accordingly, for the foregoing reasons, Defendant's motion to strike (Doc. 58) is **GRANTED** and the class allegations contained in Paragraphs 14 through 24 are stricken from the complaint.

**IT IS SO ORDERED**.
Date:  11/15/13                                           */s/ Timothy S. Black*
                                                          Timothy S. Black
                                                          United States District Judge

---

[7] Plaintiffs argue that because they "allege that the blunt its effects advertising statement is baseless, a causal relationship can be inferred." (Doc. 61 at 19). In support, Plaintiffs cite *Lee v. Carter-Reed Co.*, 203 N.J. 496 (2010), which is inapposite. In *Lee*, the court held that causation can be inferred "if all of the promised benefits of [the product] are based on untruths and disseminated through false advertising, whatever the medium, a trier of fact may fairly infer that a consumer purchasing the product was influenced, in some way or other, by the false-marketing scheme." *Id.* at 527. In this case, Plaintiffs allege that a single statement, "Vitamin C: It won't cure a cold, but vitamin C can help blunt its effects. Aim for 500 mg a day," is false, not that "all of the promised benefits" of the Products are false. Moreover, the "blunt its effects" statement was not disseminated" through advertising, and it did not appear in any advertisements for the Products. Given these facts, the Court cannot reasonably infer that the "blunt its effects" statement influenced even a handful of putative class members to purchase the Products, let alone every class member.